**S. H. KRESS & COMPANY, Appellant,**
v.
**NATIONAL LABOR RELATIONS BOARD, Appellee.**
No. 18339.

United States Court of Appeals
Ninth Circuit.
April 23, 1963.

---

**226**

---

George O. Bahrs and Robert J. Scolnik, San Francisco, Cal., for appellant.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras and Stephen B. Goldberg, Attys., N. L. R. B., Washington, D. C., for appellee.

Before CHAMBERS, ORR and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case is before the Court on the petition of S. H. Kress & Co., to review and set aside an order of the National Labor Relations Board, issued July 11, 1962. The Board, in these proceedings, determined that Kress had "interfered with and restrained its employees in the exercise of rights guaranteed them by section 7 of the [National Labor Relations] Act,[1] and has thereby engaged in and is engaging in unfair labor practices within the meaning of section 8(a) (1) of the Act." The Board ordered Kress to cease and desist from such interference and restraint and to post notices that it would refrain from the conduct found to have constituted the interference and restraint.

Before the Board the facts were established by stipulation. There is no question of demeanor evidence. The question raised upon this petition is whether the stipulated facts may be said to establish interference and restraint by Kress of section 7 rights of its employees. In our judgment, they may not.

Kress is engaged in a nationwide merchandising business and maintains a retail store in Stockton, California. On August 2, 1961, Local 439 of the National Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America filed a petition with the Board seeking a Board-conducted election in a sixty-employee unit of the Stockton store. In accordance with established Board procedures, the Union submitted with its petition a "showing of interest" in the form of cards signed by Kress employees, authorizing Union representation. By Board practice, such showing of interest should demonstrate that 30

1. National Labor Relations Act, section 7:
   "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

per cent of the employees in the affected unit favored Union representation. A representation hearing was scheduled by the Board for September 27, 1961.

Thereafter, approximately thirteen employees voluntarily advised Kress' management that they did not believe that 30 per cent of the employees had signed Union cards. On the basis of this information Kress management proceeded to interview employees respecting their having signed Union cards. With respect to these interviews the stipulation of facts states:

"Respondent, by its officers and agents, Labor Relations Representative Charles G. Barry, and Store Manager Glenn E. Greenbank, on or about September 15 and September 16, 1961, interviewed some forty-five employees in the unit petitioned for by the Union. Each of said employees was called in separately and interviewed by and in the presence of Greenbank and Barry. Said interviews were conducted in a storeroom area, so as not to interfere with the normal business of the store, wholly unconnected with the Manager's office. The interviews were conducted during working hours and the employees were paid for the time spent during said interviews.

"Each employee was told that the Company * * * wanted to determine whether the Union had obtained enough signatures to represent 30% of the employees in the unit in support of the Union's petition for election. Each employee was assured that his (or her) job was not endangered and that he (or she) could speak freely. Each employee was further advised that it was not Respondent's intention to inquire into their feelings for or against the Union, that they were under no obligation to discuss the subject of the Union or union organization, and that they were not required to furnish any information to [the Company], if they did not wish to do so, and were free to leave at any time.

"Each employee was handed a mimeographed form as follows:

"S. H. KRESS & CO.
"Stockton, California

"I have not signed a card for the union to represent me as an employee of S. H. Kress & Co.

"Dated ........ Signed ........
"Employee

"Each employee was asked to read the mimeographed form and was told that he (or she) could sign it or not, as he (or she) wished, that the matter was confidential and would not affect his (or her) job. Forty of the employees signed such forms. One employee stated she had not signed a Union card but did not want to sign the mimeographed form either, and consequently did not do so. Five employees said that they had signed Union cards and, when asked by Respondent if they were sure what it meant, replied in the negative. They were then informed that if, under those circumstances, they wished to revoke the cards, they could do so by so indicating on the mimeographed form. Four employees thereupon signed the mimeographed form, adding the following note: 'I signed a card but would like to have it revoked.' One employee signed, adding the following: 'At the time I signed the card I was unaware of the purpose of the card.' None of these 'revocations' were communicated to the Union, then or thereafter.

* * * * * *

"Apart from the filing of the petition in Case No. 20–RC–4706, the Union at no time had expressly claimed to represent a majority of Respondent's employees and had at no time demanded recognition as representative of Respondent's employees.

"On September 19, 1961, Barry forwarded to the office of the Twen-

tieth Region the forty-five signed forms, with a letter pointing out that these signed forms represented over 70% of the employees in the unit and requesting an administrative investigation to determine whether or not the Union had an adequate showing of interest at the time of the filing of the petition on August 2, 1961. The Regional Office made an investigation on the basis of which it concluded that some of the signed mimeographed forms referred to in paragraph VIII, above, were false. The nature and scope of said investigation were not revealed to [the Company]."

Nothing in this stipulation bears directly upon the factual question whether any employee regarded himself as coerced in respect to section 7 rights. To find such a coercive effect one must find that the employees disbelieved what the employer said to them, and, on the contrary, believed that their employment was endangered should they refuse to sign the mimeographed form. There is nothing in the record to suggest such a finding.

The Board has fixed on the fact that certain employees had revoked their authority to the Union, and has concluded that this demonstrated coercion. The stipulated facts do not justify such a conclusion. Section 7 grants the employees a right to be free from union representation, and we find nothing intrinsically coercive in a pointing out of this fact when accompanied by the assurances which were here given.

On this record the revocation, then, is more consistent with a desire to correct a misunderstanding than it is with a coerced submission to the employer.

The Board's decision to us constitutes not so much a finding on crucial facts as a ruling that because of Board policy (here newly announced), certain conduct per se constitutes coercion or interference.

In that decision, it is held that a union's petition for election gives no legitimate purpose to an interrogation to ascertain the extent of union support; that such interrogation, on the contrary, is an improper usurpation of Board functions. The case of Blue Flash Express, 109 N.L.R.B. 591, is distinguished upon the ground that there the union had gone directly to the employer, claiming majority representation, and had requested recognition by the employer. While under those circumstances the employer had a legitimate purpose in testing the truth of the union's claims, here, the Board rules, no such purpose existed.

But the existence of "legitimate purpose" is certainly no justification for coercion. Nor, would it seem, should lack of such purpose per se constitute coercion. The question, we should suppose in every case, is whether the purpose (legitimate or not in the eyes of the Board) would appear to the employees to constitute reasonable grounds for an interrogation. If so, the fact of interrogation in and of itself would carry no sinister implication to the employees.

In this case we should suppose that the employees would regard it as wholly reasonable for an employer, faced with reports from thirteen employees casting doubt on the Union's standing, to interest itself in an ascertainment of the truth.

Further, the Board appears to have ruled that the securing of signed expressions from the employees constituted an improper violation of their right of privacy in the matter of union affairs. Again, however, this circumstance is here relevant only in so far as it is shown to have had a coercive effect.

We find from the record no evidence of a background of employer hostility to union organization, or of improprieties in the manner of conducting the interviews. Under these circumstances, lacking any indication that any employee actually disbelieved the employer's assurances and felt in some way restrained in the exercise of his rights, this record does not support a conclusion of coercion

or interference. Compare N. L. R. B. v. Roberts Brothers (9 Cir. 1955) 225 F.2d 58 with N. L. R. B. v. California Compress Company (9 Cir. 1959) 274 F.2d 104. See also, e. g., Bon-R Reproductions, Inc. v. N. L. R. B. (2 Cir. 1962) 309 F.2d 898, 904; N. L. R. B. v. Firedoor Corp. (2 Cir. 1961) 291 F.2d 328, cert. den. 368 U.S. 921, 82 S.Ct. 242, 7 L.Ed.2d 136.

The Board's order is set aside.