NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CLEARFIELD CHEESE COMPANY,
Inc., Respondent.

No. 14271.

United States Court of Appeals
Third Circuit.

Argued June 10, 1963.

Decided Aug. 30, 1963.

Herman M. Levy, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., on the brief), for petitioner.

William U. Smith, Clearfield, Pa. (Smith, Smith & Work, Clearfield, Pa., on the brief), for Clearfield Cheese Co., Inc., respondent.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

The National Labor Relations Board found that the respondent, Clearfield Cheese Company, Inc. ("Company") violated Section 8(a) (1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (1) and (5), by refusing to bargain collectively with the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO ("Union"), following certification of the Union as collective bargaining representative for the Company's employees. 139 N.L.R.B. No. 2. The Board instituted this proceeding to enforce its order directing the Company to cease and desist from engaging in the unfair labor practices found and to bargain with the Union upon request.

The Company concedes that it has refused to meet and bargain with the Union. Its refusal is based upon the assertion that the Union is not validly certified. This presents the basic issue in this proceeding.

The material facts are as follows:

On August 23, 1961, the Union filed a petition with the Regional Director of the National Labor Relations Board requesting that a representation election be conducted among the Company's production and maintenance employees. Following a hearing, the Regional Director, on September 28, 1961, issued a Decision and Direction of Election in which he directed that an election by secret ballot be conducted among the Company's employees. The election was held on October 18, 1961, resulting in 71 votes for the Union, 71 votes against the Union and 10 challenged ballots.

On October 20, 1961, the Union filed objections to the conduct of the election and to conduct affecting the result of the election. The Union alleged as grounds for setting aside the election and ordering a new one, that the Company submitted an inaccurate eligibility list of voters, that the Company's anti-union propaganda was misleading and exceeded the bounds of fair comment, and finally, that the questioning of employees by supervisors and other activity of the Company unduly interfered with the employees' freedom of choice. The Regional Director conducted an investigation of the objections. All parties were afforded an opportunity to submit evidence on the questions raised by the objections. On December 8, 1961, the Regional Director issued a Supplemental Decision, Order and Direction of Second Election. In this Supplemental Decision, the Regional Director overruled other objections filed by the Union but concluded that a speech made by a Company official and a letter sent by the Company to employees "interfered with the election

atmosphere to such an extent that the employees' freedom of choice was impaired and accordingly the election should be set aside."

In view of his decision to set aside the election the Regional Director did not rule on the challenged ballots. On December 14, 1961, the Company filed a request with the Board for review of the Supplemental Decision asserting as a reason, among others, the failure of the Regional Director to afford it a hearing at which it could present testimony. The Board on January 16, 1962, denied the Company's request for review, finding that it raised no substantial question of fact or law.

A second election was held on February 19, 1962, which resulted in 82 votes for the Union and 72 against. On February 23, 1962, the Company filed objections to this election, alleging in substance that it was denied due process by the Board's failure to afford it a hearing with respect to the decision to set aside the first election, and that the setting aside of the first election and holding a new election for the reason specified by the Regional Director infringed on the

Company's freedom of speech. The Company also alleged that holding the second election four months after the first was contrary to the Act. On April 5, 1962, the Regional Director issued a Second Supplemental Decision and Certification of Representative. In this decision the Regional Director overruled the Company's objections and certified the Union as bargaining representative for the employees. On April 30, 1962, the Board denied the Company's request for a review of this Second Supplemental Decision.

Following the Union's certification, the Company refused to bargain with the Union, contending that the election and certification were improper. On May 24, 1962, the Union filed an unfair labor practice charge, alleging that the Company's refusal to bargain violated Section 8(a) (1) and (5) of the Act. The Regional Director subsequently issued a complaint in this matter. At the ensuing hearing, the Company offered to produce the testimony of three hourly and two supervisory employees and a member of management to testify concerning the offending speech and letter.[1] An objec-

---

1. The offer of proof was as follows:

"Mr. Smith: May I put a rather lengthy offer on and have the ruling and save ourselves some time?

"Trial Examiner: Surely

"Mr. Smith: I will offer to prove by the following witnesses: J. Hamer Tate, a representative of management; Minnie Dunlap, a member of the unit, an hourly employee; Edward Caldwell, a member of the unit and an hourly employee; Rose Schafer, a member of the unit and an hourly employee; Russell Dickie, a superintendent; and Al Eshelman, a superintendent, that the speech of J. Hamer Tate—

"Trial Examiner: Excuse me. That was how many employees?

"Mr. Smith: Three hourly and two supervisory.

"Trial Examiner: Thank you.

"Mr. Smith:—that the speech of J. Hamer Tate which was given after the approval of counsel and in reliance upon counsel to the assembled hourly employees on October 11, 1961, after working hours and without any compulsion to attend did not contain any threat or promise of benefit related to union ac-

tivity at the Clearfield Cheese Company plant in Curwensville, Pennsylvania. I will further offer to prove by, the same witnesses that a letter from the Clearfield Cheese Company management dated October 13, 1961, and mailed to all employees in the unit was sent after approval of this letter by counsel and in reliance upon the advice of counsel and did not, in the opinion of the sender, nor in the opinion of at least five recipients of said letter, contain any threat or promise of benefit relating to union activity at the Clearfield Cheese Company plant in Curwensville, Pennsylvania, and that, therefore, the Regional Director's action in setting aside by an ex parte decision the election of October 18, 1961, and ascribing as a basis for this action in his Supplemental Decision and Order of December 8, 1961, specifically at page 7, the reason that this speech and letter contained a threat; that said action of the Regional Director was without validity and consequently, the election of February 19, 1962, was invalid and, therefore, upon the advice of counsel, the Respondent has refused to meet with the petitioning Union. * * *"

tion to the offer was sustained on the ground that it was an attempt to relitigate an issue already determined by the Board. The Trial Examiner concluded that the Company had violated the Act.

Upon the basis of the foregoing facts, the Board, affirming the Trial Examiner, concluded that the Company, by its refusal to bargain collectively with the Union, violated Section 8(a) (1) and (5) of the Act.

The components of the Company's defense to the Board's petition are, first, that the certification is subject to review in this enforcement proceeding; second, that the certification is invalid because no objection had been made concerning the conduct invoked as the ground for setting aside the first election; third, that the speech and letter were privileged under the Act; and fourth, that the Board did not produce at an open hearing substantial evidence, as it should have, to show that the speech and letter violated the Act, and, the Company should have been permitted to prove that the speech and letter did not violate the Act.

■ In accepting the Trial Examiner's findings and recommendations in the unfair labor practice proceeding, the Board subscribed to his refusal to reenter ground already covered by the Board's decision in the certification proceedings. The policy of the Board is indicated in Mountain States T. & T. Co. v. Local Union 532, 136 N.L.R.B. No. 96. While the Company is apprehensive that this policy might affect the scope of our inquiry in this enforcement proceeding, we find nothing in it so limiting. The Board does not so contend. Since the Company has preserved its position throughout, there is no occasion to extend our decision in this direction unless we should conclude that the Company is right in its defense. Cf. Inland Empire Dist. Council, etc. v. Millis, 325 U.S. 697, 700, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945). However, we note that attacks on an election have been reviewed as part of the record in unfair labor practice proceedings, since there is no direct review of a certification; e. g. N. L. R. B. v. Joclin Manufacturing Company, 314 F.2d 627, 631 (2 Cir. 1963); N. L. R. B. v. Lord Baltimore Press, Inc., 300 F.2d 671 (4 Cir. 1962); N. L. R. B. v. Moyer & Pratt, Inc., 208 F.2d 624 (2 Cir. 1953); see also N. L. R. B. v. Trancoa Chemical Corporation, 303 F.2d 456, 461 n. 6 (1 Cir. 1962).

We are of the opinion that the Board is entitled to enforcement of its order for these reasons:

■■ The contention of the Company that the second election violates § 159(c) (3) because it was held within twelve months of the first must assume the validity of the first election, for the proscription of the Act applies only where "a valid election shall have been held" within the stated time. The argument that the speech and letter were privileged under § 158(c) of the Act and protected by the First Amendment to the United States Constitution, must assume that the speech and letter did not contain coercive or threatening language, for the special protection of the Act applies only "if such expression contains no threat of reprisal or force or promise of benefit."

■ Furthermore, in the appraisal by the Board of the bases for refusing to certify an election deemed contaminated, it is not required to rely only on conduct which would qualify as an unfair labor practice under Section 158 of the Act. Cf. Foreman & Clark, Inc. v. N. L. R. B., 215 F.2d 396, 409–410 (9 Cir. 1954), cert. den. 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697.

■■ It serves no useful purpose to expand upon the proposition that the establishment of procedures and safeguards to insure fairness in elections is entrusted to the Board with a wide degree of discretion. N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946). The functions described are committed in the first instance to the Board. By way of due consideration for the respective jurisdic-

tions of the Board and the courts we may not interpose our judgment in the resolution of disputes which invoke those special talents attributed to the Board and its personnel and fall within their primary jurisdiction under the law. N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). See Celanese Corporation of America v. N. L. R. B., 291 F.2d 224 (7 Cir. 1961), cert. den. 368 U.S. 925, 82 S. Ct. 360, 7 L.Ed.2d 189.

■ Here, the Union had included among its objections to the first election the claim that the Company's anti-union propaganda exceeded the bounds of fair comment. The Regional Director, after conducting the investigation provided for in the Board's rules found that a speech and letter [2] of the Company conveyed a threat that the Company would go out of business in Curwensville, Pennsylvania, if the Union prevailed in the election and generated fear among the employees that their future employment depended upon the Union's defeat.

The Board agreed with the Regional Director. The Company concedes that the speech and letter were designed to influence its employees to vote against the Union or at least not to vote for it, but vigorously contends that they were privileged because they contained "no threat or promise." We are unable to say that a mistake was made by the Regional Director or the Board in their appraisal and evaluation of the contents of the speech and letter to the contrary.

The Company refers us to our decision in N. L. R. B. v. Morris Fishman & Sons, Inc., 3 Cir., 278 F.2d 792, 796 (1960). We do not depart from the principles there endorsed. There we noted the "great advantage of specialized knowledge and experience" of the Board and its personnel, and refused to substitute our judgment for theirs. The Company here evidently patterned its offer

of proof after our statement in that case that "Any determination of the exact nature and effect of such statements [alleged threats] can be made only with due regard for the context of the statements, the characters and economic positions of those who heard it, and the relationships existing between a company and its employees." The circumstances of that case required factual development of the utterances, to whom and in what context they were made. Here, the statements and their context, the characters and economic positions of those who heard or received them and the relationship between the Company and its employees are known, undisputed, and do not require particularization.

■ The Company's assertion that the speech and the letter were prepared under the advice of counsel is not an excuse. The Company's view that the speech here involved is "practically the same speech given by Rockwell in N. L. R. B. v. Rockwell Mfg. Co., 271 F.2d 109 (3 Cir. 1959) is incorrect.

■ We agree with the Board that under the circumstances which prevailed in this case no substantial issue of fact appeared which required a formal hearing. See N. L. R. B. v. O. K. Van Storage, Inc., 297 F.2d 74, 76 (5 Cir. 1961); Foreman & Clark, Inc. v. N. L. R. B., supra; N. L. R. B. v. Moyer & Pratt, Inc., supra; N. L. R. B. v. Huntsville Mfg. Co., 203 F.2d 430 (5 Cir. 1953). Nor do we think that the Company's offer of proof in any particular demonstrates an area for factual inquiry demanding a formal hearing, or even that such a hearing, if had, would bear fruitful results. Indeed, the preferred testimony of some employees (who presumably would testify favorably for the Company) as to their understanding of the speech and letter does not begin to reach the substance of the matter. But such testimony would invite the further in-

2. The Company states in its brief that the speech was made by one of the two owners in the Company cafeteria after working hours; employee attendance was not compulsory but about 50% attended; there was no roll call; copies of the speech were available immediately afterwards; and the letter was mailed to each employee.

quiry, in this instance, as to the direction of the witness-employees' thoughts on representation by the Union, or how he cast his vote: an inquiry destructive of the purpose of the secret ballot and creative of the spectre of post-election change of mind. See N. L. R. B. v. Trancoa Chemical Corporation, supra, 303 F.2d at page 461; Cross Company v. N. L. R. B., 286 F.2d 799, 801 (6 Cir. 1961). Where, as here, the record establishes the substantially general broadcast of the offending material, it would not seem necessary to establish that the employees were actually coerced, since it is evident the material was capable of producing that result. Cf. N. L. R. B. v. Trancoa Chemical Corporation, supra. The Board is entitled to rely upon its expertise in reaching its conclusion. For our part, an analogy exists in assessing the prejudice of error in a lower court's charge to the jury; we do not call jurors as witnesses.

For the reasons stated the Order of the Board will be enforced.