**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**IDEAL LAUNDRY AND DRY CLEANING CO., Respondent.**

**No. 7381.**

United States Court of Appeals Tenth Circuit.

April 23, 1964.

Melvin Pollack, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Peter Giesey, Washington, D. C., with him on brief), for petitioner.

John K. Pickens, of Dawson, Griffin, Pickens & Riddell, Washington, D. C., for respondent.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and KERR, District Judge.

MURRAH, Chief Judge.

The N. L. R. B. petitions for enforcement of its cease and desist and post notice order against respondent, Ideal Laundry And Dry Cleaning Co., for refusing to bargain with the Union,[1] in violation of Section 8(a) (5) and (1) of the N.L.R.A., 29 U.S.C. § 158(a) (5) and (1). See: 140 N.L.R.B., No. 145. The respondent's admitted refusal to bargain with the certified Union is based upon the assertion that the Board's determination as to the appropriate employee bargaining unit, and its voiding of two ballots cast in the representation election were contrary to law, arbitrary and capricious.

The Trial Examiner made the following uncontroverted findings: The Union filed a representation petition, seeking designation as the bargaining representa-tive of certain employees of the respondent. After a § 9(c) hearing (apparently in accordance with 29 C.F.R., §§ 102.64, 102.65, and 102.66), the Regional Director directed an election in a unit consisting of the laundry and dry cleaning production and maintenance employees, excluding, inter alia, salaried and commissioned drivers. Respondent, thereafter, filed a request for review with the Board, urging that all its employees except guards and supervisors be included in the unit and allowed to vote in the representation election. In a telegraphed order, the Board denied the request, stating that "the only substantial issue raised * * * involves unit placement of salaried drivers, and such issue * * can best be resolved through challenge procedure."

The tally of ballots cast in the election showed: 59 undisputed votes for the Union, 58 against it; and, 6 were challenged and 2 were voided. The respondent objected to the conduct of the election, contending that the challenged ballots of the six salaried drivers should have been counted, and further objected to the voiding of the two ballots. Following an investigation, pursuant to 29 C.F.R., § 102.69(c), the Regional Director issued a "Supplemental Decision," wherein he sustained the challenges and the voiding of one ballot, refused to consider the other voided ballot, and certified the Union as the bargaining agent. The respondent lodged an appeal with the Board. See: 29 C.F.R., §§ 102.69(c), 102.67(b) and (d). Approximately nine months later, the Board denied review, on the ground that the request raised "no substantial or material issue with respect to the Regional Director's determination * * *." The Union, thereupon, requested recognition as the certified bargaining representative, but the respondent refused, giving rise to this unfair labor practice proceedings.

The Trial Examiner in this proceedings rejected all offers of proof by the

1. Dry Cleaning and Laundry Workers, Local Union No. 304, Laundry, Dry Clean-ing and Dye House Workers International Union.

respondent on the issue of the appropriateness of the bargaining unit, on the ground that the proffered proof did not indicate that respondent's operations had changed since the hearing in the representation case; that such evidence was cumulative; and, that he was, therefore, "bound by the Board's decision in the representation case."

The respondent's vital point of contention is to the effect that it is entitled to an opportunity for hearing on the appropriateness of the bargaining unit, in accordance with the due process requirements provided by § 5 of the Administrative Procedure Act, 5 U.S.C. § 1004; and, that since representation proceedings are specifically exempt from the requirements of § 5, it is entitled to be heard in this proceedings wherein its refusal to bargain is predicated upon the inappropriateness of the certified bargaining unit. The respondent does not seem to complain of the lack of opportunity for hearing in the pre-election proceedings, pursuant to which the Board ordered an election within the designated unit subject to challenge. The specific complaint is that the post-election investigation on the unit placement of the six challenged drivers was conducted without respondent having an opportunity to be heard; and, that it was on the basis of this investigation that the Regional Director found and the Board agreed that "the interests of the six drivers involved differ sufficiently from those of the plant employees to negate a mutuality of interests between the two groups."

■ The appropriateness of the bargaining unit is the salient issue in this unfair labor practice proceedings, and respondent is, to be sure, entitled to a due process hearing on that issue. And, if an opportunity for a full hearing on the critical issue was not afforded in the representation proceedings, respondent is entitled to be heard in this unfair labor practice proceedings.

■ The proceedings under § 9(c), to determine the appropriate bargaining unit for purposes of certification, though conducted as a "hearing upon due notice," is purely administrative and does not contemplate a final determination of the rights of the parties. It may be, and usually is, conducted by an officer or employee of the Regional Office, who makes no recommendations with respect thereto. See: 29 C.F.R., § 102.64. The Board is entrusted with wide discretion in establishing the procedure and safeguards necessary to a free and fair choice of a bargaining representative by the employees. See: N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322. Orders and decisions of the Board, concerning the conduct of an election and certification of an appropriate bargaining unit under § 9(c) of the Act, are interlocutory and not directly reviewable. For judicial intervention at this point would hamper the administration of the Act. But, an aggrieved party may question the appropriateness of the bargaining unit in a proceedings to review or enforce under § 10(e) or (f), based upon errors of law underlying the certification, such as the disposition of challenges to election ballots. See: Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Local 901, International Bro. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Compton (10 CA), 291 F.2d 793; and N. L. R. B. v. Joclin Manufacturing Company, (2 CA), 314 F. 2d 627. And, the Court will examine the entire record to determine: (1) whether the aggrieved party was accorded a fair hearing; and, (2) whether the Board applied the proper legal criterion in determining the eligibility of the challenged ballots. See: N. L. R. B. v. Joclin Manufacturing Company, ibid.

■ Section 9(d) provides that whenever an unfair labor practice order of the Board under § 10(c) is based in whole or in part upon facts certified pursuant to a pre-election investigation under § 9(c), and there is a petition for enforcement or review of such order, such certification and the record of such investigation shall be included and the transcript of the en-

tire record is required to be filed under § 10(e) or (f), and, thereupon, the decree of the Court enforcing, modifying, or setting aside, in whole or in part, the order of the Board, shall be made and entered upon the pleadings, testimony and proceedings set forth in such transcript. While the proof adduced at the § 9(c) proceedings is carried forward as relevant evidence in an unfair labor practice hearing involving the appropriateness of the unit, and in proceedings to enforce the Board's order therein, it is not conclusive of the issue. Due process demands that either party be permitted to produce additional proof deemed material to the vital issue of appropriateness, if it was not a part of the record in the representation proceedings, and for some reason was unavailable for consideration by the Board in its decision therein. See: Pittsburgh Plate Glass Co. v. N. L. R. B., supra.

■ The Board sustained the Trial Examiner's rejection of the proffered testimony on the ground that the issues were fully litigated in the representation proceedings; and, that there was no evidence proffered which was "newly discovered or unavailable" to the respondent at the time of the representation hearing. See: Footnote to the Board's Order. This disposition of the matter ignores the fact that respondent had no notice of the post-election investigation, nor was it apprised of the evidence obtained thereby, except insofar as reflected in the recitations of the Regional Director's Supplemental Decision. It appears that respondent first learned of the existence and content of the affidavits of the six challenged drivers from the affiants themselves. In its request for review, respondent, by affidavit of its President, made reference to the ex parte affidavits of the employees and stated that the information contained therein was generally true "as far as it goes," but that there was other information which would justify a different interpretation of these affidavits. The President's affidavit went on to relate the additional facts deemed important to the critical issue. The Board, however, declined the request for review as being without substance.

■■ While the Board may, in the exercise of its administrative discretion, deny an opportunity for hearing in the representation proceedings on evidence elicited by a post-election investigation, respondent is entitled to produce in this unfair labor practice proceedings any additional, relevant evidence bearing upon the critical issue. See: N. L. R. B. v. Lord Baltimore Press, Inc., 300 F.2d 671. And cf. N. L. R. B. v. Jesse Jones Sausage Co., 309 F.2d 664, 667. In this proceedings, the respondent has offered all the post-election affidavits, the testimony of two relief drivers, testimony of its President, and two local, industry-wide collective bargaining contracts between dry cleaning establishments and the Union. The purpose for the introduction of these contracts was to show that retail and wholesale truck drivers have been included in similar bargaining units. All of this proffered evidence, having been rejected as immaterial, stands as admitted for purposes of review. We will thus examine the entire record, including the pre-election testimony and all proffered evidence, to determine whether the Board's § 8(a) (5) and (1) Order can be supported by substantial evidence.

■ It is important to remember that the general criterion of an appropriate unit is "whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a bargaining agent. * * *" N. L. R. B. v. Belcher Towing Co., (5 CA) 284 F.2d 118, 121. And see: N. L. R. B. v. George Groh And Sons (10 CA), 329 F.2d 265. Making application of this criterion and in accordance with its decision in Koester Bakery Co., Inc., 136 N.L.R.B., No. 100, the Board considered the following factors in determining the unit placement of the drivers: "(1) whether they have related or diverse duties, mode of compensation, hours, supervision, and other conditions of employment; and, (2) whether they are engaged in the same or re-

lated production process or operation or spend a substantial portion of their time in such production or adjunct activities." The Board then recited with approval the findings of the Regional Director in his Supplemental Decision, to-wit: "The six salaried drivers have working conditions that differ in many respects from those of the production and maintenance employees in the plant. Apart from the normal duties incidental to truckdriving, such as loading and unloading trucks, the * * * drivers do no work inside the plant except on occasions when they assist, on a voluntary basis, in sorting, folding, and wrapping laundered articles for the purpose of expediting their own deliveries, * * *."

The record shows without dispute that the bargaining unit consists primarily of in-plant production and maintenance workers. In the pre-election representation proceedings, the Manager of all the respondent's departments (produced as witness for the respondent) testified concerning the nature of the business conducted, and particularly the function and duties of the drivers, and their relationship to other employees included in the bargaining unit. The drivers are composed of two groups or classes, i. e., salaried drivers who serve commercial accounts, and commissioned drivers, who solicit and service non-commercial or family accounts. The six salaried drivers include four regular and two relief drivers. The plant Manager testified that the truck drivers did not perform any work in the plant, other than bringing bundles into the plant and putting them in the respective service departments; and, that interchange between the truck drivers and in-plant employees occurs only when a "washman" or "extractor man" goes out on relief work for the truck drivers. .

█ The post-election ex parte affidavits of the drivers, and the proffered testimony of respondent's President, relied upon by respondent to contradict the Board's findings, particularize the respective in-plant and outside duties of the drivers, the hours worked, and their compensation, but does not contradict the pre-election testimony of the Manager in that regard, nor do we think it impeaches the quoted findings of the Board. In any event, this proffered proof is not sufficiently contradictory to require us to over-turn the Board's determination of the appropriate unit. But, in reaching its decision on the facts, the Board has completely ignored or failed to give consideration to the expressed wishes of the drivers.

█ While the desires of employees with respect to their inclusion in a bargaining unit is not controlling, it is a factor which the Board should take into consideration in reaching its ultimate decision. See: Pittsburgh Plate Glass Co. v. N. L. R. B., supra. Indeed, it may be the single factor that would "tip the scales." See: N. L. R. B. v. Underwood Machinery Co., 1 Cir., 179 F.2d 118; and N. L. R. B. v. Botany Worsted Mills, 3 Cir., 133 F.2d 876.

In the pre-election hearing, respondent offered four witnesses from different departments, i. e., office employees, dry cleaners, engineers and routemen, who would testify whether they felt their department should be included in the bargaining unit. After discussion concerning this testimony, the Hearing Officer informed counsel for respondent that he would not be barred "from asking questions about the duties of employees or anything that might be considered in determining the appropriateness of the unit, but as to the wishes of the employees, [the Hearing Officer] would have to exclude such questions." Counsel for respondent thereupon made a formal offer of proof, to the effect that certain named witnesses would, if permitted, testify "as to their desires." In its request for review prior to the election, respondent complained of the Hearing Officer's refusal to hear this testimony, contending that the "office employees and drivers should be allowed to testify as to their wishes and that of other people in their departments," and that "this in itself is substantial error; their testimony may very well have been a determining factor

when the record was submitted to the Regional Director." The Board made no mention of this point in its telegraphic order. In the Supplemental Decision and certification of representation, the Regional Director took no note of the desires of the drivers, but did specifically find that the salaried and commissioned drivers constituted a "separate, homogenious (sic.) group for the purposes of collective bargaining representation."

The record does not indicate that either the Regional Director or the Board ever recognized or gave consideration to the expressed desires of these employees at any step of the representation proceedings. When the matter came on for hearing on the unfair labor practice charge, the respondent again sought to show by testimony of two relief drivers that they wished to be included in the bargaining unit, the Examiner's attention was directed to the fact that the Hearing Officer in the representation proceedings had excluded this testimony, and that the Board had upheld the Hearing Officer. The proffered proof was excluded by the Examiner on the ground that no reason had been shown "why this was not, or could not be introduced in the representation case." In sum, this testimony was excluded as irrelevant in the representation proceedings, and as untimely in the unfair labor practice hearing.

We conclude that it was error, as a matter of law, for the Board to exclude all such relevant testimony, and on the whole record, as it comes to us, we are of the view that the respondent has been denied a full hearing on the critical issue of the case. We must, therefore, decline to enforce the Board's order. The order will accordingly be vacated, and the case remanded to the Board for redetermination of the appropriateness of the bargaining unit on the basis of the proffered evidence, including testimony with respect to the desires of the excluded employees.

If upon consideration of the whole record, the Board is of the view that the bargaining unit was inappropriate and that a new election within a modified unit would best serve the purposes of the Act, the question of the validity of the two voided ballots will, of course, be mooted. If, however, the Board should conclude and redetermine that the present unit is appropriate for bargaining purposes, the validity of the two voided ballots is crucial to the propriety of the certification. On the contingency of the Board's determination, it becomes necessary to decide the validity of the two voided ballots, either of which would affect the outcome of the election.

■ The Board refused to consider the validity of one ballot, on which the "Yes" and "No" boxes were both marked "No", for failure of respondent to file written objection to the action of the Board Agent within the five-day period provided by the rules of the Commission. See: 29 C.F.R., § 102.69(a). Respondent seeks to avoid the limitation of the rule by relying upon its oral objection, followed by an untimely written objection. While it would seem highly technical to rely upon the failure to timely file a written objection in these circumstances, we must respect the wide discretion of the Board, to determine in any case whether an exception should be made to its prescribed rules and regulations. See: N. L. R. B. v. A. J. Tower Co., supra.

■ The Board sustained the voiding of the other ballot, signed by a blind worker. In accordance with § 9(c) of the Act, the Regional Director ordered an election by secret ballot. The signing of the ballot identified the voter, and violated the rule of secrecy. The respondent argues, however, that the veil of secrecy is personal to the voter; and, that the signing of the name lifted the veil. It is argued moreover that the challenge procedure involuntarily destroyed the secrecy of the ballot; and, that the rule falls with the reason therefor. The short and conclusive answer is that the Board and not the voters prescribe the rules for the conduct of the election, and all voters must abide the rules. The identification of the voter voided the ballot by operation of the rule itself, and the

Board had no power to give it any validity. See: N. L. R. B. v. National Truck Rental Co., 99 U.S.App.D.C. 259, 239 F.2d 422; and Semi-Steel Casting Co. of St. Louis v. N. L. R. B., 160 F.2d 388, cert. den. 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344.