**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MOVIE STAR, INC., Movie Star of Poplarville, Inc., Movie Star of Ellisville, Inc., Movie Star of Magnolia, Inc., Movie Star of Purvis, Inc., Movie Star of Collins, Inc., Movie Star of Sumrall, Inc., Respondents.**

**No. 21447.**

United States Court of Appeals
Fifth Circuit.
May 24, 1966.

348

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Nancy Sherman, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, for petitioner.

C. Dale Stout, New Orleans, La., Irving D. Lipkowitz, New York City, Robert Cohn, Atlanta, Ga., Lipkowitz, Plaut, Salberg & Harris, New York City, Kullman & Lang, New Orleans, La., for respondents Movie Star, Inc. and others.

Before WHITAKER, Senior Judge,* and WISDOM and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge.

The National Labor Relations Board has petitioned this Court to enforce its order issued against Respondents on December 10, 1963.

Respondents are a New York corporation and six subsidiary corporations engaged in the manufacture and distribution of women's lingerie. The Union involved is the International Ladies Garment Workers Union, AFL–CIO. The Union filed unfair labor practice charges against Respondents. In its findings and conclusions, the Board found, in agreement with the Trial Examiner, that Respondents had violated Section 8(a) (1) of the National Labor Relations Act [29 U.S.C. § 158(a) (1)] by threatening employees with loss of employment because of their union activities, threatening to close or move the plants in the event of a strike, interfering with the employees' attempts to persuade other employees to join the Union, asking employees to withdraw from the Union and interrogating employees about union activities. The Board further found that Respondents violated Section 8(a) (1) by helping employees to withdraw from the Union. The Board and the Trial Examiner both found that Respondents violated Section 8(a) (5) and (1) by bargaining directly with the employees in disregard of the Union's exclusive bargaining status and by withdrawing recognition from the Union when the Union lost its majority status as a result of the Respondents'

unfair labor practices. The Board found, in disagreement with the Examiner, that Section 8(a) (5) and (1) were violated by the Respondents' failure to furnish the Union with records to support the Respondents' claim that the granting of Union demands would adversely affect its competitive position. The Board's order required Respondents to cease and desist from these unfair labor practices and to bargain with the Union on request. The order also required the customary posting of notices at each of Respondents' plants. Each of the alleged violations will be considered separately.

I.

Alleged Violations of Section 8(a) (1)

The Trial Examiner and the Board cited numerous instances where some of Respondents' supervisors engaged in conduct which amounts to a violation of Section 8(a) (1). Without itemizing the various acts of interference and coercion, we have no difficulty in finding substantial evidence on the record as a whole in support of the Board's findings. For example, one supervisor told an employee, "If you want to work, you better get out of the damn union." Another employee was told that she would be "sorry" if she "didn't get out of the union." One supervisor told an employee that if the employees struck their names would be put on a list and they could not work anywhere, and the plant would be closed. These are the type of threats which have been explicitly held to be violative of the Act. See N. L. R. B. v. Moore Dry Kiln Company, 5th Cir. 1963, 320 F.2d 30, 32; N. L. R. B. v. Griggs Equipment, Inc., 5th Cir. 1962, 307 F.2d 275, 277–278.

Although the Trial Examiner did not so find, the Board found that Respondents also violated Section 8(a) (1) by assisting employees to withdraw from the Union. The Board's summation of the evidence on this point was as follows:

"The record establishes that employees were not only provided with office facilities, including paper, pens,

and pencils, but they were also advised as to the manner in which to reject their membership in the Union. The record further reveals that, at one plant, prepared typewritten forms were handed to employees and one employee, who merely requested termination of dues deductions from her paycheck, was instead given a form to sign which also included a statement that she no longer wished to belong to the Union. Under all the circumstances herein, when viewed in conjunction with Respondents' appeals to employees to withdraw from the Union, we are convinced that Respondents' conduct constituted more than mere ministerial aid. Accordingly, we find that Respondents' assistance in effectuating the withdrawals was violative of Section 8(a) (1) of the Act."

 We think there is substantial evidence in support of this finding by the Board, especially in view of the other Section 8(a) (1) violations, which both the Examiner and the Board found to be part of a general pattern or course of conduct which coerced the employees and deprived them of the free choice guaranteed them by the Act. Cf. N. L. R. B. v. Kropp Forge Co., 7th Cir. 1949, 178 F.2d 822, 828–829, cert. denied, 340 U.S. 810, 71 S.Ct. 36, 95 L.Ed. 595. See also N. L. R. B. v. Birmingham Publishing Co., 5th Cir. 1958, 262 F.2d 2, 7–8; Martin Sprocket & Gear Co. v. N. L. R. B., 5th Cir. 1964, 329 F.2d 417, 419.

The Board's order with regard to the Section 8(a) (1) violations will be enforced.

## II.

### The Alleged Attempt to Bargain Directly with the Employees in Violation of Section 8(a) (5)

The primary basis for the finding by the Examiner and the Board in this regard is a letter written by Respondents' Board Chairman, Milton Herman. The letter was read to the employees at all the plants, set out the position of the Respondents as to Union demands, and urged the employees to vote to accept the Respondents' proposal "when it is submitted to you at Union meetings, which no doubt will be called for the purpose of presenting the Company's proposal to you." The letter also stated that the Respondents' proposal had been submitted to the Union committee at negotiations held the prior week as a "final proposal." It is this latter language which Petitioner points to as being a direct bargaining with the employees, since Petitioner argues that the finality of the Respondents' offer had never been communicated to the Union at the negotiations.

 As this Court said in discussing a similar contention by the Board in N. L. R. B. v. Southwire Co., 5th Cir. 1965, 352 F.2d 346, 348, "we conclude that the Board reads too much into this language." Petitioner readily admits that at the negotiations, Respondents' representatives told the Union that the Company "had offered as much as it could under all the circumstances [and] could not offer anything more by way of an increase in its costs and remain competitive." We think this language was sufficient to communicate to the Union the "finality" of Respondents' offer, and we therefore agree with Respondents that the letter was privileged under Section 8(c) of the Act, which provides:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

See also N. L. R. B. v. Transport Clearings, Inc., 5th Cir. 1962, 311 F.2d 519.

Accordingly, enforcement is denied as to that portion of the Board's order which found that Respondents had violated Section 8(a) (5) by attempting to bargain directly with the employees.

## III.

### The Alleged Violation of Section 8(a) (5) for Failing to Furnish the Union with Financial Records

With regard to Respondents' alleged failure to furnish the Union with finan-

cial records to support the Respondents' claim that the granting of Union demands would injure its competitive position, the testimony in the record is to the effect that at a meeting on August 7, 1962, Respondents offered to make such records available for Union inspection, and this offer was accepted by the Union. The records were not furnished. The Trial Examiner found that the failure to furnish the records was not the result of bad faith but was due to a break-down in negotiations. The Board, however, disagreed with the Examiner and found that the failure to furnish the records constituted bad-faith bargaining.

The test to be applied to a situation of this type was expressed by the Supreme Court in N. L. R. B. v. Truitt Manufacturing Co., 1956, 351 U.S. 149, 152–153, 76 S.Ct. 753, 755–756, 100 L.Ed. 1027, 1032:

> "Good faith bargaining necessarily requires that claims made by either bargainer should be honest claims. This is true about an asserted inability to pay an increase in wages. If such an argument is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy. And it would certainly not be far-fetched for a trier of fact to reach the conclusion that bargaining lacks good faith when an employer mechanically repeats a claim of inability to pay without making the slightest effort to substantiate the claim. * * * We agree with the Board that a refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith.
>
> " * * * We do not hold, however, that in every case in which economic inability is raised as an argument against increased wages it automatically follows that the employees are entitled to substantiating evidence. Each case must turn upon its particular facts. *The inquiry must always be whether or not under the circumstances of the particular case the statutory obligation to bargain in good faith has been met.* * * *"* (Emphasis added.)

■■ Our application of the *Truitt* test to the facts in this case convinces us that the Board's finding of bad-faith bargaining cannot be sustained. *Truitt* speaks in terms of a *refusal* to furnish pertinent data, while in the instant case Respondents initiated the offer to furnish the data and Petitioner refers to no evidence where another demand was made for the data by the Union. We therefore think the Trial Examiner's interpretation of the situation was valid. "In assessing the substantiality of the Board's conclusions, whatever in the record fairly detracts from their weight, including the findings of the trial examiner, must be considered." United Fire Proof Warehouse Co. v. N. L. R. B., 7th Cir. 1966, 356 F.2d 494, 498.

We therefore deny enforcement of the Board's order insofar as it finds that the failure to furnish financial data was a violation of Section 8(a) (5).

### IV.

#### The Alleged Refusal to Bargain in Violation of Section 8(a) (5)

The last bargaining sessions which took place between the Respondents and the Union occurred on August 7 and 8, 1962. At the close of the session on August 8, the Union representative (Kehrer) stated that he would get in touch with company representatives concerning the date for another meeting. A week or so later, Kehrer tried to reach Respondents' Board Chairman (Herman) but was unsuccessful. On August 22, Kehrer sent a telegram to Herman in which he stated that the Union would strike unless agreement was reached by August 31. In reply, Respondents' Vice President and Treasurer telegraphed Kehrer that a mutually convenient date for a meeting would be arranged. Thereafter, a meeting was arranged for August 28 in New Orleans.

On August 28, however, when the parties met, the attorney for Respondents read a statement which recited that the Company had that morning filed a petition for an election with the National Labor Relations Board, on the ground that the Union no longer represented a majority of the Company's employees. This statement was also read to the employees at the various plants. The Respondents therefore refused to negotiate with the Union on and after August 28, 1962.

This refusal was found by both the Examiner and the Board to be a violation of Section 8(a) (5) of the Act, on the ground that the Union's loss of majority was attributable to the Respondents' unfair labor practices. The record reflects that the numerous Section 8(a) (1) violations committed by Respondents' supervisors began about the middle of August and continued beyond August 28.

█ It is clear that an employer cannot refuse to bargain with a Union pending an election unless it has a good-faith doubt that the Union has a majority. Skyline Homes, Inc. v. N. L. R. B., 5th Cir. 1963, 323 F.2d 642, cert. denied, 376 U.S. 909, 84 S.Ct. 662, 11 L.Ed.2d 607; N. L. R. B. v. Security Plating Company, 9th Cir. 1966, 356 F.2d 725. Respondents strenuously urge, however, that the Union had already lost its majority status prior to the inception of the alleged Section 8(a) (1) violations. Respondents also contend that a large number of the withdrawals from the Union cannot be attributed to the Section 8(a) (1) violations, even though they occurred after the violations began. The record does not clearly indicate when the Union lost its majority, and the Trial Examiner expressly found that the Union represented a majority of the employees until mid-August. Even if we were to assume that the Union might have lost its majority without the Respondents' unfair labor practices, we could not sustain Respondents' position under the circumstances of this case.

█ █ It is well settled that an "employer will not be permitted to dissipate the union's majority by a series of Section 8(a) (1) violations and then demand that an election be held." Skyline Homes, Inc. v. N. L. R. B., supra, at 649. See also Medo Photo Supply Corp. v. N. L. R. B., 1944, 321 U.S. 678, 687, 64 S.Ct. 830, 835, 88 L.Ed. 1007, 1013; Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 704–705, 64 S.Ct. 817, 818–819, 88 L.Ed. 1020, 1022–1023; N. L. R. B. v. Poultry Enterprises, 5th Cir. 1953, 207 F.2d 522, 525; Smith Transfer Co. v. N. L. R. B., 5th Cir. 1953, 204 F.2d 738, 740; Superior Engraving Co. v. N. L. R. B., 7th Cir. 1950, 183 F.2d 783, 792, cert. denied, 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671. The rationale behind this rule is that an employer should not be allowed "to reap the benefits of its obstructive and unlawful acts." N. L. R. B. v. Poultry Enterprises, Inc., 207 F.2d supra, at 525.

While it may be that at some earlier point in time the Respondents might have validly asserted a good-faith doubt as to the Union's majority status, they did nothing to dispute that majority status until August 28, when the course of conduct found by the Board to have been violative of the Act was in high gear. The effect of Respondents' numerous Section 8(a) (1) violations was to transform a possible good-faith doubt of the Union's majority into a bad-faith virtual certainty.

█ Nor will we give weight to Respondents' urging that the Union had not been certified by the Board. This argument is without merit. It is undisputed that at some time before the unfair labor practices began, the Union represented a majority of the employees and that Respondents had voluntarily recognized the Union without calling for an election. Furthermore, it is settled that the duty to bargain does not depend on a Board election and certification. N. L. R. B. v. Elliott-Williams Co., Inc., 7th Cir. 1965, 345 F.2d 460, 464; Skyline Homes, Inc. v. N. L. R. B., supra, 323 F.2d at 647.

The result is that we "cannot say that the Board's finding as to the [Respondents'] motive in requesting an election is so unreasonable an inference from the proven facts that it is not supported by substantial evidence on the record as a whole." N. L. R. B. v. Everett Van Kleeck & Co., Inc., 2nd Cir. 1951, 189 F.2d 516, 517. Moreover, "It is for the Board not the courts to determine how the effect of prior unfair labor practices may be expunged." International Association of Machinists, etc. v. N. L. R. B., 1940, 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50, 57. Those portions of the Board's order which require Respondents to cease and desist from refusing to bargain with the Union and to bargain with the Union on request are hereby enforced.

Respondents make two final contentions: (1) that they were denied due process when they were refused pretrial discovery of information in the possession of Petitioner's General Counsel, and (2) that they were denied a fair hearing because the Examiner was biased. Our examination of the record discloses that both of these contentions are without merit.

The order of the National Labor Relations Board is enforced in part and denied in part.