**EXCELSIOR LAUNDRY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 9687.**

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1968.

Rehearing Denied and Rehearing En Banc
Denied April 15, 1969.

Robert C. Poole, Albuquerque, N. M. (Rufus G. Poole and Robert P. Tinnin, Jr., Albuquerque, N. M., were with him on the brief), for petitioner.

Charles Steele, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frank H. Itkin and Peter Giesey, Attys., N. L. R. B., were with him on the brief), for respondent.

Before WILBUR K. MILLER*, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Petitioner, Excelsior Laundry, seeks review of a Board order holding that it had violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1), by refusing to bargain with the certified representative of its employees. By its answer to the petition the Board seeks enforcement of its order.

On October 21, 1965, the Union, the Communication Workers of America, AFL-CIO, filed a representation petition with the Board. On December 2, 1965, a consent election was held. The result was 67 votes for and 86 votes against the Union. After timely objection by the Union alleging improper Company conduct influencing the election, an administrative investigation was held and the Board set aside the election. On March 18, 1966, there was a second election in which the vote was 78 for and 72 against the Union with 13 ballots challenged. After a hearing, the Board sustained a sufficient number of challenges to leave the resulting vote in favor of the Union. The basis for the ruling was that the contested ballots were cast by supervisors.

The Company contends that the Board erred in setting aside the first election. The Union raised five objections to that election. The Regional Director sustained two of these. The Company excepted to the report and the Board sustained the Director on one objection only. This exception related to solicitation of employees by agents of the Company to sign cards repudiating the Union.

The Company admits that about a month before the election its supervisors distributed throughout the Company premises approximately 60 Company prepared cards and solicited employees' signatures. The text of the card was:

"PETITION FOR NATIONAL LABOR RELATIONS BOARD

We, the undersigned employees, of our own free will and accord and without any coercion or undue influence whatsoever from any party, wish to inform the National Labor Relations Board that we are opposed to the unionization of the employees of the Excelsior Laundry by the Communications Workers or any other union.

Date ―――――

Signed ――――――"

The Regional Director considered the objections administratively and conducted no hearing. He received two affidavits which were tendered by the Union and which tended to show coerciveness in the card distribution. He rejected 70 Company affidavits tending to show no coercion. He denied the Company the right to cross-examine the two individuals whose affidavits he accepted. He made no finding of Company animosity towards the Union or of other Company coercion. He held, and the Board agreed, that the card distribution was a per se violation which invalidated the election.

* Of the District of Columbia Circuit, sitting by designation.

■ We recognize that Congress entrusted to the Board the control of election proceedings [1] and that such control includes a wide degree of discretion in establishing indispensable procedures and safeguards.[2] The question is whether in this instance the Board has abused that discretion.[3]

■ Before an election may be set aside, the actions claimed to be coercive must be shown to have had a probably prejudicial effect on the fairness of the election.[4] The Board argues that the distribution of the cards was per se coercion within the meaning of 8(a) (1). The court decisions which it cites [5] are not persuasive because in each there were other threats or coercive conduct by the employer. Such proof is lacking here. We know of no court decision that the distribution of cards such as those with which we are concerned is a violation in the absence of some showing of other coercion or union animosity.[6]

■ Here we have the admitted circulation of the cards to less than half of the employees more than a month before the election plus two affidavits allegedly showing coercion. In the administrative proceedings, 70 counter-affidavits offered by the Company were rejected. No hearing was held so that the Company could cross-examine the two affiants whose statements were received. No finding was made of coercion except on the basis of the card distribution. We believe that the Company tendered a reasonable and material issue which was substantially related to the circumstances and effect of the card distribution. It never had an opportunity to be heard on this issue. We believe that it was entitled to an evidentiary hearing,[7] and that the decision of the Board without such hearing was an abuse of discretion.[8]

This decision makes it unnecessary for us to consider the validity of the ballots challenged at the second election.

The petition for review is granted and the case is remanded to the Board for an evidentiary hearing on the objections to the first election. Because the Board acted only on the objection relating to card distribution and because other objections made by the Union raise fact questions, the hearing should encompass all pertinent objections.

Enforcement is denied at this time without prejudice to further consideration if, after hearing, the Board determines that as a matter of fact there was coercion affecting the fairness of the election.

1. National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704.

2. National Labor Relations Board v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322; and National Labor Relations Board v. Ideal Laundry and Dry Cleaning Co., 10 Cir., 330 F.2d 712, 715.

3. See National Labor Relations Board v. Zanes Ewalt Warehouse, Inc., 5 Cir., 384 F.2d 794, 796, n. 1.

4. Cf. National Labor Relations Board v. Mattison Machine Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455.

5. National Labor Relations Board v. S & H Grossinger's Inc., 2 Cir., 372 F.2d 26, 28–29; Edward Fields, Inc. v. National Labor Relations Board, 2 Cir., 325 F.2d 754, 759–760; and National Labor Relations Board v. Movie Star, Inc., 5 Cir., 361 F.2d 346, 348–349.

6. See S. H. Kress & Co. v. National Labor Relations Board, 9 Cir., 317 F.2d 225, in which it is held that the circulation by an employer of a petition relating to the signing of representation cards was not a violation of § 8(a) (1) in the absence of any other showing of coercion.

7. National Labor Relations Board v. Bata Shoe Company, 4 Cir., 377 F.2d 821, cert. denied 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265.

8. Cf. National Labor Relations Board v. Ideal Laundry and Dry Cleaning Co., 10 Cir., 330 F.2d 712, 718.

DAVID T. LEWIS, Circuit Judge (dissenting).

I dissent. The majority recognizes that the Board is entrusted with a wide degree of discretion in determining the fairness of an election but here holds that the Board has clearly abused its discretion through failure to determine as a matter of fact that the employer's action resulted in actual coercion to particular persons. I most certainly agree that the Board cannot find the existence of coercion through consideration of employees' affidavits to that effect but the Board may determine, from undisputed facts, that an election should be set aside as not meeting the standards—rather naively termed the "laboratory conditions"—that further the purposes of the National Labor Relations Act. A proper and required standard need not peak in an actual unfair labor practice. NLRB v. Shirlington Supermarket, 4 Cir., 224 F.2d 649, 652–53; NLRB v. Clearfield Cheese Co., 3 Cir., 322 F.2d 89, 92.

The text of the cards distributed by the company prior to election is such as to negative any legitimate purpose by the employer in seeking the commitment of its employees to the substance of the text. The company solicited its employees to reject unionism itself, a commitment which, per se, extends far beyond the particularized issues of the election but is a clear reflection of the attitude of management. And, admittedly, the company withdrew distribution of the cards after reaching 60 of its 155 employees because such action had created hostility among its employees. To me, these undisputed facts could well be considered by the Board, without further inquiry, to have created a pre-election atmosphere inconsistent with its established standards for a free and uncoerced election.

I would affirm the Board on this aspect of the case and proceed to a consideration of the merits.

Rehearing denied; LEWIS, J., dissenting.

Rehearing en banc denied; LEWIS and HOLLOWAY, JJ., dissenting.