NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

EXCELSIOR LAUNDRY COMPANY,
Respondent.

No. 71–1446.

United States Court of Appeals,
Tenth Circuit.

May 8, 1972.

Eugene B. Granof, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Julius Rosenbaum, National Labor Relations Board, with him on the Brief), for petitioner.

Dan A. McKinnon, III, Albuquerque, N. M., for respondent.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The National Labor Relations Board seeks to enforce its order issued against Excelsior Laundry Company, hereinafter called the Company, to recognize and bargain with the Union in violation of § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1).

The Communications Workers of America filed a representation petition with the Board on October 21, 1965, seeking to represent the workers of the Company. An election was held on December 2, 1965, which the Union lost by 19 votes. The Union objected to the election, alleging improper conduct by the Company in creating a coercive atmosphere at the time of the election. The election was set aside by the Regional Director. A second election was conducted on March 18, 1966 in which the Union won by 6 votes. Thirteen ballots were challenged.

On March 24, 1967, the Union requested recognition. The Company refused to bargain and the Union filed an unfair labor practice charge. The Trial Examiner determined that the Company vio-

lated § 8(a) (5) and (1) of the Act. The Board adopted the Examiner's findings and ordered the Company to bargain with the Union. 167 N.L.R.B. 455 (1967).

The Company appealed the Board's order to this court. We ordered that an evidentiary hearing should be held to determine whether or not the first election was fair. Excelsior Laundry v. National Labor Relations Board, 409 F.2d 70 (10th Cir. 1969). The hearing was held September 30, through October 2, 1969. The Board found that the Company had interfered with employees in the exercise of their right to freely choose a collective bargaining representative. The Board held that the first election was properly set aside and ordered the Company to bargain with the Union. 186 N.L.R.B. 129 (1970).

The Union contends that the election was tainted by the Company because: (1) the Company harassed its employees while soliciting their signatures on cards which repudiated the Union; (2) the content and timing of the Company's campaign propaganda went beyond permissible bounds; and/or (3) the Company coercively interrogated employees, engaged in surveillance, and solicited employees to engage in surveillance.

■ ·On the morning of the first election some 25 to 30 Company employees were directed by supervisors to go to the linen room where the Plant Manager, Tony Jackson, addressed them. Jackson stated that if the Union entered the plant a strike would result and the employees would be replaced. The Board found that Jackson's speech violated the "24 hour" rule of Peerless Plywood Co., 107 N.L.R.B. 427 (1953), which prohibits employers and unions:

"... from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election. Violation of this rule will cause the election to be set aside whenever valid objections are filed." 107 N.L.R.B. at 429.

The rule was enacted to prevent last-minute speeches from having an unsettling effect and interfering with a free election. Such tactic is an unfair advantage to the party having the last word and it mades no difference whether the remarks have a coercive effect or not, if addressed to employees gathered on company time. We note that the *Peerless Plywood* rule:

"... does not prohibit employees or unions from making campaign speeches on or off company premises during the 24-hour period if employee attendance is voluntary and on the employee's own time." 107 N.L. R.B. at 430.

Jackson's remarks were made to the gathered employees at the plant on Company time within 24 hours of the election. Their attendance was not voluntary. They were directed by their supervisors to attend on Company time. The election was thus properly set aside. We need not reach the merits of the other unfair labor practices found by the Board.

■ The Company alleges that if the Board's action is upheld we should rule as to whether the Board erred in sustaining the Union's challenges to the ballots of four employees in the second election and in declining to rule upon the Union's challenge to the ballot of a fifth employee. The voting unit agreed to by the parties excluded clerical employees, professional employees, guards, watchmen, and supervisors defined in the Act. The Company alleged that the ballots of five supervisor-trainees should have been included since the agreement does not specifically exclude them. The Board held that where a stipulated unit does not specifically include or exclude supervisor-trainees the agreement will be construed according to the established Board unit placement policy which excludes employees who are in training to become supervisors. With the four votes excluded there were sufficient votes in favor of the Union requiring its certification as the bargaining repre-

sentative of the unit employees. We will not disturb the Board's unit placement policy.

Enforcement granted.