**CENTRAL MERCHANDISE COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–1069.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1972.

Decided Dec. 20, 1972.

Rehearing and Rehearing En Banc Denied Jan. 22, 1973.

E. J. Holland, Jr., Kansas City, Mo., for petitioner.

Steven Kahn, Atty., N.L.R.B., Washington, D. C., for respondent.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, District Judge.*

BRIGHT, Circuit Judge.

The National Labor Relations Board found Central Merchandise Company guilty of unfair labor practices during a union-organizing campaign conducted through the summer and early fall of 1970. The Board, in its order, affirmed the trial examiner's finding that the company had violated § 8(a)(1) of the Labor Management Relations Act, 29 U. S.C. § 158(a)(1), by (1) promulgating a rule prohibiting employee solicitation on behalf of the union, (2) threatening employee Richard Burns with discharge for violation of that rule, (3) interrogating employees respecting their attitudes toward and desire to join the union, (4) threatening loss of possible benefits if the union were successful, and (5) promising improved working conditions in the absence of unionization. Additionally, and contrary to the finding of the trial examiner, the Board found (6) a violation of § 8(a)(3) of the Act in the firing of Richard Burns for union activity and (7) a further violation of § 8(a) (1) in the postelection polling of employees whose votes had been challenged by the company. The company has filed a petition for review in which it disputes the Board's determination of items (6) and (7) above. We find adequate support in the record for the Board's determination of these questions and grant enforcement of the Board's order.

The evidence relating to Burns' discharge shows that on July 18, 1970, company employees, including a supervisor, discovered Burns smoking in a toilet stall in the men's restroom. The matter was reported to the warehouse manager, who, after ascertaining the truth of the matter, summarily discharged Burns for violation of the no-smoking rule. The trial examiner found that the no-smoking rule had been promulgated to reduce

* Eastern District of Michigan, sitting by designation.

the fire hazard in the warehouse and to discourage employees from taking time from work to smoke. Smoking was permitted, however, in a recreation area of the warehouse even though combustible materials were located nearby.

The record, moreover, establishes a strong union animus on the part of company management which had earlier been directed at Burns. Burns exercised leadership in the drive to establish the union at the company warehouse. He had been the victim of earlier employer conduct found by the Board to constitute unfair labor practices. These findings are not contested here. The record discloses frequent violations of the no-smoking rule by other employees, evidenced by cigarette butts found on the premises. Burns, however, was the first employee actually caught violating the rule.

■ Although the question is a close one, we are satisfied that the evidence supports the Board's resolution of the issue of Burns' dismissal. Under the circumstances disclosed here we find this case distinguishable from the discharges for violations of safety rules in NLRB v. Speed Queen, 469 F.2d 189 (8th Cir., 1972) (discharge for failure to wear safety glasses while working on plant machinery), and Arbie Mineral Feed Co. v. NLRB, 438 F.2d 940 (8th Cir. 1971) (discharge for drinking beer on duty while driving an employer's truck), cases in which we rejected the Board's order finding each employee discharge to violate § 8(a)(3). The violations in these cases appeared far more serious and less likely to have been a pretextual cover for antiunion sentiment on the part of the employer.

■ We next examine the polling issue. The union won the election held on September 18, 1970, by a vote of 54 to 47. The company challenged seven votes. About two weeks after the election, the new general manager (succeed-ing the manager who had fired Burns); called those challenged into the office and asked each to vote the same way he voted in the election on a new ballot form. The manager stated that this repolling was necessary to save company expense. He explained that if anyone voted for the union, the union would be declared the winner and in such an event the company might just as well withdraw its challenge and save paying a "ridiculous amount of money" to its attorneys. During this conversation, the manager assured the employees that their jobs would not be affected by their votes "either way" and that he would leave the room while they balloted. The employees voted before the manager had time to leave and left their ballots on or in the manager's desk. All ballots were marked "no" (against the union).

The secrecy of his ballot is an important protection afforded the employee by § 9(c) of the Labor Management Relations Act,[1] in order to implement the right of employees to self-organization and to collective bargaining through "representatives of their own choosing," guaranteed by § 7.

The Board has long regarded postelection inquiries into the manner in which employees voted as an intrusion upon the privacy of the voting process. *E. g.,* Bausch & Lomb Optical Co., 69 NLRB 1104, 1105 (1946); Libbey-Owens-Ford Co., 63 NLRB 1, 2–3 (1945); A. J. Tower Co., 60 NLRB 1414, 1416 n. 4 (1945), aff'd, 329 U.S. 324, 332 (1946). Cf. NLRB v. Clearfield Cheese Co., 322 F.2d 89, 93–94 (3d Cir. 1963); Valley Transit Co., Inc., 142 NLRB 658, 666–667 (1963), enf'd 338 F.2d 697 (5th Cir. 1964).

We, too, have recognized the impropriety of such postelection inquiry. In NLRB v. Louisiana Manufacturing Co., 374 F.2d 696 (8th Cir. 1967), we said:

Equally offensive is the questioning of employees as to how they and their

---

1. Section 9(c) provides in part:
   If the Board finds * * * that * * * a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

fellow employees voted in a certification election. The ballot is supposedly secret and the employer normally has no right to privately interrogate each employee as to how he or his fellow workers plan to vote or voted in a certification election. * * * The usual connotation of a probing for this information is that those who "voted wrong" will be singled out for special treatment. This does not accord employees their statutory rights to freely organize without fear of reprisals or intimidation.- [*Id.* at 701 (citations omitted).]

Accordingly, we sustain the Board on this issue and enforce the Board's order in its entirety.