**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**S & H GROSSINGER'S INC., Respondent.**

Nos. 237, 238, Dockets 30606, 30607.

United States Court of Appeals Second Circuit.

Argued Dec. 9, 1966.

Decided Feb. 1, 1967.

William C. Wachter, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Nancy M. Sherman, Washington, D. C., attorney), for petitioner.

Meyer Pesin, Jersey City, N. J. (Francis B. Conrad, New York City, of counsel), for respondent.

Lord, Day & Lord, New York City (John F. O'Connell, New York City, of counsel), submitted a brief for amici curiae, New York State Hotel & Motel Assn. and American Hotel & Motel Assn.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order based upon a finding of a violation by respondent of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1).[1]

Respondent Grossinger's is a famous resort hotel in the Catskill Mountains about a mile and a half from Liberty, New York, a village of approximately 5,000 inhabitants.

The Hotel hires between 565 and 786 employees depending on the season of the year. It is open the year round.

---

1. (a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

Section 157 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title.

Beginning in 1962 the Hotel and Restaurant Employees and Bartenders International Union, Local 343, AFL-CIO, has sought to organize the employees of Grossinger's. The Board has determined that Grossinger's activities in resisting organization constitute interference, restraint and coercion within the meaning of Section 8(a) (1) of the statute.

■ There is ample evidence in the record to support the Board's finding that, during the period prior to an election for the selection of a bargaining representative, Grossinger's repeatedly promised its employees a variety of benefits. There had been some expressions of dissatisfaction because there was frequently a delay in the payment of tips for conventions held at the Hotel. Management promised the employees that this delay would be eliminated. Maids were assured that their schedules would be changed so that they would work a six-day week rather than a seven-day week during the summer season and that something would be done to meet their complaints about the extra time required by late checkouts. Certain grievances of the dishwashers were characterized as "meritorious" and corrections were promised. Management announced that a grievance committee would be set up. They said that they would look into the possibility of working out a medical benefit plan. In addition to these specific promises the employees were given general assurance of improvements they would be pleased with. We will enforce the Board's order in so far as it refers to unlawful promises of benefits. See National Labor Relations Board v. Philamon Laboratories, 298 F.2d 176, 180–181 (2d Cir.), cert. denied, 370 U.S. 919, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1962); National Labor Relations Board v. Pyne Molding Corp., 226 F.2d 818, 820–821 (2d Cir. 1955).

■ On the other hand we are unable to find sufficient evidence to support the Board's finding that unlawful threats of reprisals were made. It is true that Management made several vague and general statements of pessimism about the future progress and growth of Grossinger's if the Union should win the election. These statements do not seem to us to be sufficiently definite to constitute threats. Moreover, the statements did not suggest that the Grossinger management would seek to bring about any of the unfortunate conditions which they feared might occur. Rather than threats the Management's statements seem to have been prophecies of a somewhat shadowy doom. We will modify the Board's order to eliminate the reference to threats of reprisals. See National Labor Relations Act, Section 8(c), 29 U.S.C. § 158 (c); National Labor Relations Board v. Lyman Printing Co., 356 F.2d 844, 845–846 (4th Cir. 1966).

■ There is support in the record for the Board's finding that Grossinger's sought to convince employees that union meetings were held under employer surveillance. Management publicly thanked employees for "making a lot of reports." An employee was told that Management knew that he had been going to all the meetings. We will enforce the Board's order in so far as it refers to leading employees to believe that there was employer surveillance of union meetings. See National Labor Relations Board v. Gotham Shoe Mfg. Co., 359 F.2d 684, 685 (2d Cir. 1966), enforcing 149 NLRB 862 (1964).

■ The evidence as to unlawful employer interrogation of employees meets the "fairly severe standards" set forth in Bourne v. National Labor Relations Board, 332 F.2d 47, 48 (2d Cir. 1964). The interrogations took place against a background of hostility to the Union. Management sought information as to "what went on at the union meeting, what we did * * * who signed up for the union." Much of the questioning was done by the Management's principal spokesman in dealing with the organizational campaign. Employees were summoned from work for questioning and on one occasion there was a tape recorder in full view of the employee. The evidence supports the conclusion that the employee interrogation was coercive. We will enforce the Board's order in respect

to employee interrogation. See Edward Fields, Inc. v. National Labor Relations Board, 325 F.2d 754, 758–759 (2d Cir. 1963).

■ The Board's finding that Grossinger's encouraged and solicited employees to withdraw their union affiliation is supported by substantial evidence in the record. The Management suggested to the employees that they withdraw, assisted them in the preparation of a petition and permitted the petition to be circulated for signatures on company time and property. We will enforce the Board's order in respect to the encouragement and solicitation of withdrawal from the Union. See Edward Fields, Inc. v. National Labor Relations Board, supra, 325 F.2d at 759–760.

The most bitterly contested portion of the Board's order is that which requires Grossinger's to allow nonemployee organizers access to employees residing on the Hotel premises. It is conceded that the Union requested such access for its representatives and that it was refused. The issue is whether the Board was acting within its statutory powers in ordering Grossinger's to permit Union organizers to come onto its property.

Grossinger's is located on a 468 acre tract and has about 600 guest rooms and more than 300 rooms for employees who live on the premises. About 60 percent of the employees or from 309 to 511, depending on the season, live on the premises. Resident employees usually eat all their meals at the Hotel. Many facilities, both recreational and service, are available on the Hotel premises and resident employees leave the Hotel only rarely for brief visits to the neighboring village of Liberty.

Employees who do not live on the premises live in nearby villages and go to work in taxis or private automobiles. About two thirds of them eat all their meals at the Hotel.

The employees, both resident and nonresident, work on odd shifts in order to provide continuous services in all departments.

When employees leave the premises they do so ordinarily by taxicab or private automobiles through the main gate where a guard is stationed. The Union's attempts to reach employees at this point have been ineffective since the cars do not stop here except that some are stopped momentarily for a red traffic light, and since in any event it is difficult or impossible to distinguish between guests and employees.

No effective alternatives are available to the Union in its organizational efforts. The resident employees have no telephones in their rooms. Radio and newspaper advertising are expensive and relatively ineffectual. Moreover as far as radio is concerned, there was no single time at which a major proportion of employees would be off duty and free to listen to a message broadcast by the Union. As this Court said in National Labor Relations Board v. United Aircraft Corp., 324 F.2d 128, 130 (2d Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964):

"The predictable alternatives [to personal contacts] bear without exception the flaws of greater expense and effort, and a lower degree of effectiveness. Mailed material would be typically lost in the daily flood of printed matter which passes with little impact from mailbox to wastebasket. Television and radio appeals, where not precluded entirely by cost, would suffer from competition with the family's favorite programs and at best would not compare with personal solicitation. Newspaper advertisements are subject to similar objections."

While some organization work can be done by employees who are willing to solicit fellow employees, it is obvious that, lacking as they do the requisite special training and experience, they cannot convey the Union's appeal with anything like the effectiveness of professional union organizers.

■ We read Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), National Labor Relations Board

v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638 (1949) and National Labor Relations Board v. Babcock and Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956) to require the Board in each case to balance the necessities of the Union for direct access to employees against the employer's right of control over his own property and any detriment which might result from the admission to that property of union organizers. In the *Babcock* case, the Court said at p. 112, 76 S.Ct. at p. 684:

> "This is not a problem of always open or always closed doors for union organization on company property. Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the, two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize.
>
> The determination of the proper adjustment rests with the Board. Its rulings, when reached on findings of fact supported by substantial evidence on the record as a whole,* should be sustained by the courts unless its conclusions rest on erroneous legal foundations."

The Court held in the *Babcock* case that the Board had erred because it "failed to make a distinction between rules of law applicable to employees and those applicable to nonemployees." But in the case of nonemployees soliciting for the union "if the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property" (p. 113, 76 S.Ct. p. 685).

■ In the *Babcock* case the employees lived in communities close to the plant. Their quarters were "in reasonable reach" (p. 113, 76 S.Ct. p. 679). Here the majority of the employees live on the employer's premises. They cannot be reached by any means practically available to union organizers. As against these considerations Grossinger's raises only its proprietary interest. It shows no detriment that would result from the admission to its property of the Union's representatives under those reasonable regulations as to place, time and number which the Board's order contemplates.

We will enforce the Board's order in so far as it requires the Respondent to permit nonemployee union organizers to come on its premises in order to solicit employees. See Fafnir Bearing Co. v. National Labor Relations Board, 362 F.2d 716 (2d Cir. 1966); National Labor Relations Board v. Lake Superior Lumber Corp., 167 F.2d 147 (6th Cir. 1948); National Labor Relations Board v. Cities Service Oil Co., 122 F.2d 149 (2d Cir. 1941).

■■ The Board's order requires the Employer to cease and desist from making speeches to the employees during working hours on Company premises without giving the Union a similar opportunity to address the employees. Under the Act, the Board may make such an order only if the employer is enforcing a no-solicitation rule. See Bonwit Teller Inc. v. National Labor Relations Board, 197 F.2d 640 (2d Cir. 1952), cert. denied, 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342 (1953); National Labor Relations Board v. American Tube Bending Co., 205 F.2d 45 (2d Cir. 1953). Since we have upheld the Board in invalidating the Respondent's exclusion of union organizers from its property, there is no occasion for the Board's order providing the Union with

---

* *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456.

an equal opportunity for addressing the employees. The order must be modified in this respect.

The Board's order is modified in accordance with this opinion and as modified is enforced.