**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TABER INSTRUMENTS, DIVISION OF TELEDYNE, INC., Respondent.**

No. 323, Docket 33661.

United States Court of Appeals Second Circuit.

Argued Dec. 2, 1969.

Decided Jan. 27, 1970.

On Rehearing April 29, 1970.

Ronald Greenberg, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Atty., N. L. R. B., Washington, D. C., of counsel), for petitioner.

Robert S. Hillman, Baltimore, Md. (Shawe & Rosenthal, Earle K. Shawe, Daniel P. Dooley, Joseph K. Pokempner, Baltimore, Md., of counsel), for respondent.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order based upon a finding that Respondent violated Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158 (a) (1) (1964).[1]

Respondent, a division of Teledyne, Inc., is engaged in the manufacture of machine tools, aerospace equipment and related products at its plant in North Tonawanda, New York. At the time of the events involved in the charge of unfair labor practice there were about 90 employees in the bargaining unit.

In March 1967 the International Union of Electrical, Radio and Machine Workers, AFL–CIO, undertook to organize Respondent's employees. On March 15 the Union filed a petition for an election and the Board ordered the holding of an election.

There is ample evidence to show that shortly before the election Superintendent of Manufacturing Merritt Hale said to one of the employees:

> "[T]he men don't realize what they could lose in this election. If Teledyne chooses to, they could phase out these operations throughout their other plants."

In a number of conversations with another employee Hale told him that if the Union lost the election his work would be moved into a new tool room and he would be assigned only to tool room work. Hale said he "didn't know what would happen" if the Union won.

At about the same time Assistant Manager Hildebrandt told still another employee that "there was a possibility that in the event that the Union was successful that the Company, if they thought it in their best interest, could move some of the departments into other plants of the Teledyne Corporation."

On the day that the Union filed its election petition the Respondent sent a letter to the employees asking them not to join the Union and stating:

> "For those of you who have already signed IUE cards, we ask that you reconsider your actions and get your signed cards back. Let us know if the IUE will not return them.
>
> If you have any questions see your supervisor."

Respondent argues that the statements as to the consequences of the Union's winning the election were merely prophecies or expressions of opinion protected by Section 8(c) of the Act. However, as the Supreme Court said in NLRB v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969):

> "[The Employer] may even make a prediction as to the precise effects he

---

1. (a) It shall be an unfair labor practice for an employer—

 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"

believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control."

 Within the meaning of the *Gissel* case the statements of Hale and Hildebrandt must be held not to have been prophecies but "threat[s] of retaliation." See Irving Air Chute Co. v. NLRB, 350 F.2d 176, 178–179 (2d Cir. 1965).

 The promises of Hale with respect to the new tool room were also unprotected by Section 8(c), and constituted interference with organizational rights. See NLRB v. S. & H. Grossingers, Inc., 372 F.2d 26, 28 (2d Cir. 1967).

We have some doubts about the letter sent to the employees suggesting that they revoke the authorizations given to the Union. See NLRB v. Hobart Bros., 372 F.2d 203, 204 (6th Cir. 1967); NLRB v. Sparton Mfg. Co., 355 F.2d 523 (7th Cir. 1966). Since the occasion for a repetition of this action is unlikely to arise we direct that the Board's order be modified to eliminate the words:

"and soliciting its employees to revoke authorizations given to International Union of Electrical, Radio and Machine Workers, AFL–CIO, or offering assistance in such an endeavor."

We grant enforcement of the order as modified.

PER CURIAM:

The petition for rehearing is granted.

The opinion dated January 27, 1970, is modified by restoring to the Board's order the words:

"and soliciting its employees to revoke authorizations given to International Union of Electrical, Radio and Machine Workers, AFL–CIO, or offering assistance in such an endeavor."

The effect of this modification is that we enforce the Board's order in full.