**BELCHER TOWING COMPANY, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

No. 78–3343.

United States Court of Appeals, Fifth Circuit.

March 21, 1980.

Fisher & Phillips, Erle Phillips, John M. Capron, Atlanta, Ga., for Belcher Towing Co.

John P. Campbell, G. Paris Sykes, Jr., Atlanta, Ga., for amicus curiae Southern Towing Co.

Frank J. Dantone, Greenville, Miss., for amicus curiae American Barge Co., Inc., et al.

Jefferson D. Kirby, Atlanta, Ga., Horace A. Thompson, III, New Orleans, La., for amicus curiae Canal Barge Co., Inc.

James B. Kemp, Jr., New Orleans, La., for amicus curiae Chotin Barges, Inc.

Elliott Moore, Deputy Associate Gen. Counsel, Charles P. Donnelly, Atty., N.L. R.B., Washington, D. C., for N.L.R.B.

Joel C. Glanstein, New York City, for intervenor Dist. 2 Marine Engineers Beneficial Assn. Associated Maritime Officers, AFL–CIO.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

GODBOLD, Circuit Judge:

Belcher Towing operates 15 tugboats and 19 barges in the transportation of petroleum products along the coasts of Florida. It also provides docking and bunkering services to commercial vessels in the Port of Miami. It employs approximately 100 seamen.

In considering Belcher's conduct during an organizational campaign by two unions, the Board found numerous violations of the National Labor Relations Act. The Board found that Belcher had:

(1) Violated § 8(a)(1) by promulgating a no-solicitation rule that denied non-employee union organizers access to its vessels;

(2) Violated § 8(a)(3) by discharging seamen John George and John Hill for their union activities;

(3) Violated § 8(a)(1) by interrogating and threatening employees, instructing supervisors to maintain logs of union activity and to report such activity to the company, promising redress of employee grievances if employees did not seek union representation, and requesting, under coercive circumstances, that employees report any contacts they had with the unions;

(4) Violated § 8(a)(1) by discharging supervisor Frank Mosso for his refusal to commit unfair labor practices.

Belcher petitions for review and the Board cross-petitions for enforcement.

### I. The no-solicitation rule

In 1972 the company promulgated a no-solicitation rule stating that the only visitors permitted on board its tugs would be persons with bona fide business on board or those authorized by the tug's captain. In 1975 this rule was reiterated, with special instructions to the captains not to allow any union organizers on board and to report all union attempts to board. The Board found both that the union organizers did not have reasonable alternative means of access to the employees and that the no-solicitation rule was discriminatorily applied to unions. Thus it found a violation of § 8(a)(1) and ordered Belcher to discontinue the rule.

■ The validity of an employer's no-solicitation rule turns on the balance of interests between the property rights of the employer and the organizational rights of the employees. A rule that prohibits solicitation, on company premises, by non-employee union organizers is ordinarily presumed valid and will be overturned only on a showing either that the rule discriminates against unions by allowing other solicitation or that no reasonable alternative means of access to the employees exist. *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956). The Board based its order in this case on the dual grounds of discrimination and lack of alternative means of access.

■ The Board erred in its interpretation of what constitutes a discriminatory no-solicitation rule. The ALJ, whose findings and conclusions were adopted by the Board, found that because the company had allowed individuals other than union organizers *access* to the tugboats, the rule was discriminatory. However, a no-solicitation rule is discriminatory only if the employer allows non-union *solicitation* (for example, solicitation by charitable organizations). *See Central Hardware Co. v. NLRB*, 468 F.2d 252, 256 (8th Cir. 1972). There is no evidence that the company allowed solicitation by anyone; the Board's finding of discrimination is therefore unsupported by substantial evidence and the order cannot be based on such a finding.

■ The second ground for invalidating a no-solicitation rule is that the union lacks alternative means of access to the employees. Lack of alternative means has been found in such situations as a remote lumber camp, *NLRB v. Lake Superior Lumber Corp.*, 167 F.2d 147 (6th Cir. 1948), and a resort hotel, *NLRB v. S & H Grossinger's, Inc.*, 372 F.2d 26 (2d Cir. 1967).[1] While at least one circuit has held that in order to sustain its burden of proving lack of alternative means, a union must demonstrate that it unsuccessfully attempted to utilize other means, *see NLRB v. New Pines, Inc.*,

---

1. The Board has consistently found lack of alternative means of access in tugboat cases. *See, e. g., Sabine Towing & Transportation Co.*, 224 N.L.R.B. 941 (1976), *enf. denied on other grounds*, 599 F.2d 663 (5th Cir. 1979); *Ingram Barge Co.*, 204 N.L.R.B. 63 (1973); *Sioux City & New Orleans Barge Lines*, 193 N.L.R.B. 382 (1971), *enf. denied on other grounds*, 472 F.2d 753 (8th Cir. 1973); *Interlake SS Co., Div. Pickland Mather & Co.*, 174 N.L.R.B. 308 (1969).

468 F.2d 427, 429 (2d Cir. 1972), we interpret the Supreme Court's language in *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 436 U.S. 180, 205, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209, 230 (1978), and *Babcock & Wilcox, supra*, 351 U.S. at 113, 76 S.Ct. at 684, 100 L.Ed. at 983, to require only a showing that such attempts would be unsuccessful under the circumstances; a union need not have actually attempted to communicate with the employees outside of the employer's premises. In this case an adequate showing of lack of alternative means was not made because the Board incorrectly placed the burden of proving the existence of alternative means on the employer.[2] *Sabine Towing & Transportation Co. v. NLRB*, 599 F.2d 663 (5th Cir. 1979), makes it clear that the union, represented by the General Counsel, bears the burden of proving that it has no other reasonable means of access. *See Sears, Roebuck & Co. v. Carpenters, supra.* The case must therefore be remanded to the Board for a reconsideration of the issue of alternative means under a correct allocation of the burden of proof. *See NLRB v. Gulf States Canners, Inc.*, 585 F.2d 757 (5th Cir. 1978).[3]

## II. Other § 8(a)(1) & § 8(a)(3) violations

▮ The Board's finding that John George and John Hill were discharged for their union activity is supported by substan-tial evidence on the record as a whole, and this part of the Board's ruling must therefore be enforced. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We reach the same conclusion with respect to the Board's finding that Belcher had unlawfully interrogated and threatened employees, required supervisors to maintain unlawful surveillance of union activities,[4] promised benefits if employees rejected union representation, and coercively requested employees to report union contacts.

▮ The discharge of Captain Mosso requires a more detailed discussion. The Board, adopting the findings and conclusions of the ALJ, found that Mosso was discharged for his refusal to enforce that part of the company's no-solicitation rule requiring him to report all union activity on board his boat. This finding is supported by substantial evidence. Although supervisory personnel are not directly protected under the Act, the discharge of a supervisor may constitute a violation of the Act under either of two circumstances: if the discharge is motivated by the supervisor's refusal to commit an unfair labor practice or if the discharge interferes with the rank-and-file employees' exercise of their organizational rights. *See Florida Power & Light Co. v. Int'l Brotherhood of Electrical Workers*, 417 U.S. 790, 808 n. 18, 94 S.Ct. 2737,

---

**2.** While the Board did not explicitly allocate the burden of proof, it followed its earlier decision in *Sabine Towing & Transportation Co.*, 224 N.L.R.B. 941 (1976), *enf. denied*, 599 F.2d 663 (5th Cir. 1979), which placed the burden on the employer. Our decision in *Sabine Towing*, in which we held the burden of proving lack of alternative means is on the General Counsel, was not entered until after the Board proceedings in the present case had terminated.

**3.** We need not decide whether the Board's finding that allowing access to non-employee union organizers would not unreasonably interfere with the employer's business operations rests on substantial evidence. The question of interference is a rebuttal point and arises only after an adequate finding of lack of alternative means. It would be premature for us to reach an issue that might be pretermitted by a different result on the alternative means question on remand.

**4.** Surveillance need not be known to the employees to constitute an unfair labor practice. *NLRB v. Southwire Co.*, 429 F.2d 1050, 1054 (5th Cir. 1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 932, 28 L.Ed.2d 218 (1971). Moreover, while surveillance is only unlawful where it interferes with the organizational rights of employees, an explicit finding to that effect is unnecessary where an inference of interference may reasonably be drawn. *Id.* In this case, the Board's finding that Belcher's rule requiring captains to report all union activity aboard their boats constituted unlawful surveillance is supported by substantial evidence because it is reasonable to infer that the employer's use of knowledge obtained by surveillance enabled him to commit some of the other unfair labor practices detailed in the complaint.

2746, 41 L.Ed.2d 477, 490 n. 18 (1974); *NLRB v. Talladega Cotton Factory, Inc.*, 213 F.2d 209 (5th Cir. 1954). In this case, Mosso's discharge was motivated by his refusal to participate in unlawful surveillance of his crew at the behest of his employer and is therefore a separate violation of the Act. The Board's order with respect to the reinstatement of Captain Mosso must be enforced.

The petition for review is GRANTED in part and DENIED in part. Enforcement is GRANTED in part and DENIED in part. The case is REMANDED to the Board for reconsideration of the no-solicitation rule.