955 F.2d 171
 139 L.R.R.M. (BNA) 2366, 120 Lab.Cas. P 11,105
 UNITED STATES of America, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO; the
Commission of La Cosa Nostra; Anthony Salerno, also known
as Fat Tony; Matthew Ianniello, also known as Matty the
Horse; Anthony Provenzano, also known as Tony Pro; Nunzio
Provenzano, also known as Nunzi Pro; Anthony Corallo, also
known as Tony Ducks; Salvatore Santoro; Christopher
Furnari, Sr., also known as Christie Tick; Frank Manzo;
Carmine Persico, also known as Junior, also known as The
Snake; Gennaro Langella, also known as Gerry Lang; Philip
Rastelli, also known as Rusty; Nicholas Marangello, also
known as Nicky Glasses; Joseph Massino, also known as Joey
Messina; Anthony Ficarotta, also known as Figgy; Eugene
Boffa, Sr., Francis Sheeran; Milton Rockman, also known as
Maishe; John Tronolone, also known as Peanuts; Joseph John
Aiuppa, also known as Joey O'Brien, also known as Joe Doves,
also known as Joey Aiuppa; John Phillip Cerone, also known
as Jackie the Lackie, also known as Jackie Cerone; Joseph
Lombardo, also known as Joey the Clown; Angelo Lapietra,
also known as Nutcracker, The; Frank Balistrieri, also
known as Mr. B; Carl Angelo Deluna, also known as Toughy;
Carl Civella, also known as Corky; Anthony Thomas Civella,
also known as Tony Ripe; General Executive Board,
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America; Jackie Presser,
General President; Weldon Mathis, General
Secretary-Treasurer; Joseph Trerotola, also known as Joe T,
First Vice President; Robert Holmes, Sr., Second Vice
President; William J. McCarthy, Third Vice President;
Joseph W. Morgan, Fourth Vice President; Edward M. Lawson,
Fifth Vice President; Arnold Weinmeister, Sixth Vice
President; John H. Cleveland, Seventh Vice President;
Maurice R. Schurr, Eighth Vice President; Donald Peters,
Ninth Vice President; Walter J. Shea, Tenth Vice President;
Harold Friedman, Eleventh Vice President; Jack D. Cox,
Twelfth Vice President; Don L. West, Thirteenth Vice
President; Michael J. Riley, Fourteenth Vice President;
Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis,
Sixteenth Vice President; Salvatore Provenzano, also known
as Sammy Pro, Former Vice President, Defendants,
Sikorsky Aircraft, a Division of United Technologies
Corporation, Appellant.
 No. 719, Docket 91-6268.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 6, 1991.
Decided Jan. 24, 1992.
 
 Bernard M. Plum, New York City (Joseph Baumgarten, Neil H. Abramson, Proskauer Rose Goetz & Mendelsohn, of counsel), for appellant.
 Edward T. Ferguson, III, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. S.D.N.Y., of counsel), for appellee.
 Before CARDAMONE, PIERCE and MINER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 Pursuant to a consent decree entered into by the United States and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO (IBT), the IBT's 1.5 million members were scheduled to elect, for the first time, their union leadership in a rank and file secret ballot in November and December of 1991. The campaign was the culmination of an 18-month election process supervised by court-appointed officers and conducted in accordance with election rules approved both by this Court and by the district court. See United States v. International Brotherhood of Teamsters (In re Yellow Freight), 948 F.2d 98, 100 (2d Cir.1991) (describing consent decree); United States v. International Brotherhood of Teamsters, 931 F.2d 177, 187-90 (2d Cir.1991) (approving the Election Rules).
 
 
 2
 Sikorsky Aircraft (Sikorsky), a division of United Technologies Corporation, appeals from an order of the United States District Court for the Southern District of New York (Edelstein, J.), dated October 25, 1991, denying it declaratory and injunctive relief, and upholding the prior orders of the court-appointed Election Officer and Independent Administrator that directed appellant to provide limited access to its facility to nonemployee union candidates campaigning for leadership positions in the IBT.
 
 BACKGROUND
 
 3
 Sikorsky is a manufacturer of helicopter equipment, much of it for military contracts, and employs about 7,200 persons. Of those employees, 1,964 are members of IBT's Local 1150. IBT member Tom Gilmartin, Jr. was a candidate for Eastern Conference regional vice-president of IBT, a position which serves a region spanning from Maine to North Carolina and includes 300,000 IBT members. Gilmartin is a member of a "reform" slate of candidates headed by Ron Carey--candidate for IBT General President (and who was elected to that office). Gilmartin is neither an employee of Sikorsky, nor a member of Local 1150. Ballots for the elections were mailed to IBT members in early November and were to be returned to the Election Officer by December 10, 1991 in order to be counted.
 
 
 4
 The Election Officer issued a written decision on September 25, 1991 granting nonemployees limited access to the Sikorsky property. Access was granted only to areas immediately inside three gates leading to Sikorsky's parking lot and was solely for purposes of campaigning. The Election Officer noted that access to an employer's property by union members not employed by that employer is proper only where no reasonable alternative means for effective communication--one that is not overly costly or time-consuming and generally permits face-to-face communication--exist. He concluded, however, that campaigning on a small strip of land outside the gates and next to the adjacent highway was not a reasonable alternative means of communicating with the IBT member employees because entering and exiting vehicles made this alternative ineffective, dangerous and likely to result in traffic congestion.
 
 
 5
 Sikorsky appealed this adverse order to the Independent Administrator on September 26, 1991. The Administrator held a telephone hearing on October 1, 1991--prior to which the government and appellant were permitted to file written submissions of their arguments. On October 4, 1991 the Independent Administrator affirmed the Election Officer's decision to provide access for nonemployee candidates, but modified the ruling to permit campaigning in areas located nearer the entrances of the facility itself because soliciting immediately inside the parking lot entrance gates would still present congestion and safety problems. He also concluded that home visits, as a means of providing face-to-face communication, would not be a reasonable alternative to jobsite access because
 
 
 6
 [c]ontacting 4200 individuals would be prohibitively costly and time consuming. Ballots for the Election at issue will be in the hands of the members beginning November 7th. Given the cost and the time limitations, home visits would be unduly burdensome if not impossible. Accordingly they are not a reasonable alternative means of communication in this situation.
 
 
 7
 Appellant decided not to appeal the Independent Administrator's decision, and filed instead the instant action in the district court for declaratory and injunctive relief on October 25, 1991, after being notified by Gilmartin of his plans to visit the facility pursuant to the access decree. On that very same day Judge Edelstein denied appellant's requested relief, affirmed the administrative decision, and ordered appellant to comply with it immediately. The district court, inter alia, rejected appellant's arguments that, because it was not a party to the consent decree, no jurisdiction existed to make it subject to the access order or, alternatively, the National Labor Relations Board (NLRB) had exclusive jurisdiction over the matter. The district court's decision on these issues was in accord with In re Yellow Freight. See 948 F.2d at 102-06.
 
 
 8
 This expedited appeal followed. After oral argument on November 6, 1991, because of extremely limited time constraints, we vacated the stay of the district court order granted by a motions panel that expedited the appeal. Our vacation of the stay effectively granted Gilmartin access to Sikorsky's facility. We stated that our opinion would follow. Despite the fact that the election has now been held, we think it necessary to write in this case. Although federal courts are generally precluded by Article III's "case or controversy" requirement from deciding cases in which events subsequent to filing suit have effectively resolved the dispute, see Chemerinsky, Federal Jurisdiction, § 2.5.1 (1989), the mootness doctrine is "flexible" and recognizes the "uncertain and shifting contours" of Article III justiciability. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 400-01, 100 S.Ct. 1202, 1210-11, 63 L.Ed.2d 479 (1980) (quoting Flast v. Cohen, 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968)). Consequently, because the issues presented in this case are of general and recurring applicability in the Labor-Management context, we decline to dismiss this appeal as moot. See Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 122-25, 94 S.Ct. 1694, 1698-99, 40 L.Ed.2d 1 (1974).
 
 DISCUSSION
 
 9
 Appellant argues that the administrative officials and the district court failed to apply appropriate and binding National Labor Relations Act (NLRA) standards requiring consideration of whether alternative means were available for effectively communicating campaign information before granting access to the employer's plant property. In particular, appellant claims that, as in In re Yellow Freight, no consideration was given to alternative means of communicating with IBT members other than in areas immediately adjacent to the employer's facility. It adds that the union candidate carries the burden of establishing that alternative means are not available, and that Gilmartin offered no testimony or evidence on this point.
 
 
 10
 The record shows that although the Election Officer failed to consider any alternatives to compelled access--except for alternatives immediately adjacent to the employer's facility--the Independent Administrator did discuss home visits. The Independent Administrator, however, held no evidentiary hearing on this or any other alternative. Despite this, the district court concluded that "the decision of the Independent Administrator is fully supported by the record and is neither arbitrary [nor] capricious." In so concluding, we think the district court erred.
 
 
 11
 It is not disputed that "when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information." NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956); see also District Lodge 91, Int'l Ass'n of Machinists v. NLRB, 814 F.2d 876, 880 (2d Cir.1987) (right of self-organization under § 7 of the NLRA, 29 U.S.C. § 157 (1988), includes intra-union campaign activities). Nevertheless, an employer may not be ordered to grant access either when reasonable alternatives exist or when the administrative officer or district court fails to find that reasonable alternatives do not exist. See In re Yellow Freight, supra at 106-07; National Maritime Union of America v. NLRB, 867 F.2d 767, 775 (2d Cir.1989). Further, as Sikorsky correctly points out, under Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 205, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209 (1978), the union candidate has the burden of establishing the unavailability of reasonable alternatives to compelled access. We agree with Sikorsky that the appealed-from ruling improperly shifted the burden to it because the union candidate failed to make even a minimal showing that access to Sikorsky's facility was the only reasonable alternative for communicating with IBT member employees.
 
 
 12
 In National Maritime Union, we decided that an employer of 75 persons residing in 12 states could exclude union organizers from its vessels because the record was inadequate to establish that no reasonable alternative means of communication were available. 867 F.2d at 775. We emphasized the importance of face-to-face contact and concluded that mailings, telephone solicitations and invitations to meet--three other common alternatives for communicating campaign information--were not, in the absence of a realistic opportunity for such contact, reasonable alternatives. Nevertheless, we declined to rule that home visits were an unreasonable alternative because the record was inadequate to support such a finding. Significantly, the burden of proving that alternative means of communication were not reasonable was imposed not on the employer, but on the union. Id. at 773-75.
 
 
 13
 In a similar vein, In re Yellow Freight reversed a district court order that sustained an Election Officer's direction compelling an employer to grant limited access to nonemployee union candidates. There we held the Election Officer improperly restricted his consideration of alternative means of communication to those immediately adjacent to the employer's facility. At 107-08. We noted further that the consideration of alternative means of communication must be reported in more than general or conclusory terms in order for an appellate court to be assured that alternative possibilities were carefully weighed. See id.
 
 
 14
 Here, we have a record that reveals slightly more consideration of alternatives than in In re Yellow Freight. Yet, whatever consideration was given appears to have been restricted to home visits and areas immediately adjacent to the employer's facility. In addition, review of other possibilities, if any, was conducted without requiring the union candidate to satisfy his minimal burden of establishing that alternative means of communication were not available, and without permitting the employer to respond to or rebut those allegations.
 
 
 15
 The present scenario is the converse of National Maritime Union. There, other alternatives were considered, but home visits were not. Here, home visits were considered, but other alternatives were not. National Maritime Union does not stand for the proposition that mailings, telephone solicitations and invitations to meet will never be sufficient, or that home visits need be the only alternative considered. Rather National Maritime Union and In re Yellow Freight clearly mean that any reasonable alternatives or combination of alternatives be scrutinized and their availability established. Thus, the quantitative examination of alternatives below was insufficient. Moreover, the qualitative examination of alternatives in the instant case was only marginally greater than that found deficient in In re Yellow Freight and then only because of the short analysis made by the Independent Administrator with respect to home visits. Plainly the record below does not support a determination that no reasonable alternatives to compelled access were available.
 
 
 16
 We are well aware of the time constraints involved in the election context and believe this factor should be incorporated into the burden placed on the union candidate and considered when determining if various alternatives are available. Further, we observe that exhaustive consideration and discussion need not accompany every decision to compel access to an employer's facility for nonemployee union candidates. Rather, the extent of factfinding incorporated into the trial record should reflect the closeness posed by the question of whether alternative means of communicating are available. Close questions require greater consideration. The minimum consideration given in the instant case affords us no assurance that alternative means of communicating were not available.
 
 
 17
 Judgment reversed and case remanded for further proceedings not inconsistent herewith.